UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

HASAAN MCGHIE,

               Plaintiff,

    -against-

VICTORIA A. MAIN and NELLA H.
YELENOVIC,

               Defendants.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

D/F

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 1 2 2011 ★

**BROOKLYN OFFICE**
**MEMORANDUM & ORDER**
**11-CV-3110 (NGG) (JO)**

       Plaintiff pro se Hasaan McGhie ("McGhie"), currently incarcerated at the Metropolitan

Detention Center (Compl. (Docket Entry # 1) at 2), a federal prison in Brooklyn, New York,

brings the instant action, alleging that Defendant Victoria Main ("Main"), McGhie's probation

officer, and Defendant Nella Yelenovic ("Yelenovic"), Main's supervisor, violated McGhie's

constitutional rights by failing to provide him with mental health treatment, despite such

treatment being a condition of his supervised release. (See Compl.) For the reasons stated

below, McGhie's action is dismissed.

## I.   BACKGROUND

       According to McGhie, Main was his probation officer, and Yelenovic was Main's

supervisor, from December 2005 to June 2008. (Compl. at 4.) As a special condition of his

supervised release,[1] McGhie, who states he is schizophrenic, was ordered to attend a mental

health treatment program. (Id.) He did so from December 2005 until the program "abruptly

stopped" on May 28, 2008. (Id.) As a result, McGhie "went without . . . mental health treatment

---

[1] McGhie does not specify what conviction resulted in his sentence of supervised release. It is also
unclear from the Complaint when McGhie's period of supervised release was due to expire.

and medications for over a month." (Id.) McGhie alleges that the cessation of treatment caused his mental health to deteriorate, leading to what he describes as a psychotic episode and a life-threatening altercation with police, which took place on August 17, 2008. (Id. at 4-6.)

McGhie alleges that Main "committed a breach of trust" by failing to abide by the court order that he receive mental health treatment. (Id. at 4.) He also claims that Yelenovic is responsible "as the supervisor of" Main. (Id. at 5.) He claims that both Main and Yelenovic are liable for "neglect and abuse for not finding a mental health treatment program and medications in a timely fashion." (Id.) He also claims that both Defendants had "prior knowledge of dangerous[] conditions in [his] life and [left him] subject to these dangerous[s] conditions without the support of mental health treatment or medications." (Id.) Thus, McGhie claims, both Defendants are liable for "[d]eliberate [i]ndifference to [his] serious[] medical needs, discrimination and an overall deprivation of [his] rights as an American with a disability." (Id.)

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1915A(a), a district court "shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Upon such review, a district court "shall" dismiss the prisoner's complaint sua sponte if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." Id. § 1915A(b)(1). Section 1915A's third ground for dismissal— legal sufficiency—is identical to the dismissal standard under Federal Rule of Civil Procedure 12(b)(6). See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (equating standards for dismissal under § 1915A and Rule 12(b)(6)); see also Preston v. New York, 223 F. Supp. 2d 452, 462 (S.D.N.Y. 2002) (same). The legal sufficiency standard "'authorizes a court to dismiss a claim on the basis of a dispositive issue of law'" and "operates 'without regard to whether [a

2

claim] is based on an outlandish legal theory or on a close but ultimately unavailing one.'"
Shakur, 391 F.3d at 112 (quoting Neitzke v. Williams, 490 U.S. 319, 326, 327 (1989)).

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent
standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007)
(internal quotation marks omitted).  While "the submissions of a pro se litigant must be
construed liberally and interpreted to raise the strongest arguments that they suggest," Triestman
v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks
omitted), even a pro se complaint will be dismissed if it does not contain "sufficient factual
matter, accepted as true, 'to state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the
court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
Id. at 1949.  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels
and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor
does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual
enhancement.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).

**III.   DISCUSSION**

McGhie, in his Complaint, uses a pre-printed form titled "Civil Rights Complaint, 42
U.S.C. § 1983." (Compl. at 1.)  However, as Defendants are federal probation officers, the court
construes McGhie's Complaint as having been brought under Bivens v. Six Unknown Named
Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Bivens provides a remedy against
federal officials for certain constitutional violations.  See Benzman v. Whitman, 523 F.3d 119,
125 (2d Cir. 2008) ("A Bivens action is a[n] . . . instrument for correcting constitutional

3

violations[.]"); Kingsley v. Bureau of Prisons, 937 F.2d 26, 31 (2d Cir. 1991) ("In a Bivens

action, 'damages may be obtained for injuries consequent upon a violation of [the Constitution]

by federal officials'" (quoting Bivens, 403 U.S. at 395).).

### A. Negligence

To the extent McGhie alleges that the Defendants deprived him of a constitutional right

by negligently failing to provide mental health treatment, such a claim must fail. Allegations of

negligence do not state a claim under the Constitution. See Adekoya v. Fed Bureau of Prisons,

375 F. App'x 119, 121 (2d Cir. 2010) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986));

Barbera v. Smith, 836 F.2d 96, 99 (2d Cir. 1987) (same).

McGhie also cannot state a negligence claim under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. § 1346(b), which permits plaintiffs to bring civil actions against the United

States for money damages based on "the negligent or wrongful act or omission of any employee

of the Government while acting within the scope of his office or employment." Under 28 U.S.C.

§ 2401(b), "[a] tort claim against the United States shall be forever barred unless it is presented

in writing to the appropriate Federal agency within two years after such claim accrues or unless

action is begun within six months after the date of mailing, by certified or registered mail, of

notice of final denial of the claim by the agency to which it was presented." A claim accrues

when the plaintiff "kn[ows] or ha[s] reason to know of the injury serving as the basis for his

claim." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999).

McGhie includes with his Complaint, after a cover page with the words "Grievance

Procedure" written on it, a February 4, 2011 letter sent to the United States Probation

Department, in which he alleges that Main is responsible for the month-long break in his

psychiatric treatment. (Compl. at 11-12.) This letter was sent too late, for FTCA purposes.

4

McGhie's claim accrued no later than August 17, 2008, the date on which he had the "life threat[e]ning altercation with the police," which, McGhie alleges, resulted from his lack of psychiatric treatment. (Id. at 5-6.) Thus, to satisfy 28 U.S.C. § 2401(b), he had to file his administrative complaint by August 17, 2010. Based on McGhie's submissions, it appears that he failed to do so. Therefore the court will not review McGhie's claims under the FTCA.[2]

### B.    Deliberate Indifference

McGhie alleges that Defendants were not only negligent, but "deliberately indifferent." (Compl. at 5.) The deliberate indifference of government officials may, in certain limited circumstances, violate the Eighth Amendment or the Due Process Clause of the Constitution.

The Supreme Court, in Estelle v. Gamble, 429 U.S. 97 (1976), held that the government must provide adequate medical care "for those whom it is punishing by incarceration." Id. at 103. Because "[a]n inmate must rely on prison authorities to treat his medical needs," and because, "if the authorities fails to do so, those needs will not be met," potentially resulting in unnecessary suffering, the Court concluded that "deliberate indifference to serious medical needs

---

[2] Any claim under the FTCA claim would fail for another reason. Under 28 C.F.R. § 14.2(a), "a claim shall be deemed to have been presented [to the appropriate federal agency] when [the] agency receives from a claimant . . . written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident." In McGhie's letter to the Probation Department, in a section title "Relief I am seeking," he requested that "[s]evere disciplinary action" be taken, presumably against Main, along with a "written apology and a written explanation for the neglect." (Compl. at 12.) McGhie did not claim "money damages in a sum certain," as required by 28 C.F.R. § 14.2(a). He thus failed to properly exhaust his administrative remedies, precluding review of his claim under the FTCA. See 28 U.S.C. § 2675(a) (requiring administrative exhaustion of FTCA claims); Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (holding that exhaustion requirement is jurisdictional); Pinchasow v. United States, No. 06-1139-CV, 2006 WL 3370714, at *1 (2d Cir. Nov. 20, 2006) (affirming district court's dismissal of plaintiff's FTCA claim based in part on plaintiff's failure to name a "sum certain" in his letter to United States agency); Johnson v. Smithsonian Inst., 189 F.3d 180, 190 (2d Cir. 1999) (plaintiff's letter to federal agency "did not include a claim for a sum certain and therefore did not constitute the filing of a formal administrative claim for FTCA purposes").

of prisoners" violates the Eighth Amendment. Id. at 103-04. The Court in Estelle did not discuss the responsibility of the government to those not in its custody.

      In Deshaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the Court addressed the responsibility of government bodies, under the Due Process Clause, to protect people whom the government has not detained or incarcerated. In that case, county social workers allowed a young child to remain with his father despite signs of serious abuse; eventually, the father beat the child so badly that severe brain damage resulted. Id. at 192-93. The Court rejected the child's mother's due process claim, finding that the Due Process Clause does not confer any "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196. The Court noted that, in Estelle, it had "recognized that the Eighth Amendment's prohibition against cruel and unusual punishment . . . requires the State to provide adequate medical care to incarcerated prisoners." Id. at 198 (citing Estelle, 429 U.S. at 103-04). The Court had, in a subsequent case, "extended this analysis beyond the Eighth Amendment setting, holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their 'reasonable safety' from themselves and others." Id. (citing Youngberg v. Romeo, 457 U.S. 307 (1982)); see also City of Revere v. Massachusetts Gen. Hospital, 463 U.S. 239, 244 ("[T]he due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."). These cases

    stand only for the proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic

6

> human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—
> it transgresses the substantive limits on state action set by the Eighth Amendment
> and the Due Process Clause.  The affirmative duty to protect arises not from the
> State's knowledge of the individual's predicament or from its expressions of
> intent to help him, but from the limitation which it has imposed on his freedom to
> act on his own behalf.

Id. at 199-200 (internal citations omitted).  The government's constitutional duty to affirmatively

provide care and safety to individuals under the circumstances described in Deshaney has been

called the "special relationship exception" to the general rule that the government cannot violate

the Due Process Clause without itself harming an individual.  See Matican v. City of New York,

524 F.3d 151, 155 (2d Cir. 2008) ("[i]nvoluntary custody" is the "linchpin of any special

relationship exception").

In Taylor v. Garwood, 98 F. Supp. 2d 672 (E.D. Pa. 2000), the court applied the

principles discussed in Deshaney to a claim that a federal probation officer violated the Eight

Amendment and the Due Process Clause by failing to ensure that a probationer under his

supervision received sufficient psychiatric care—as alleged in the instant case.  According to the

plaintiffs in Taylor, the defendant probation officer was "deliberately indifferent" in his

supervision of the probationer (the plaintiffs' father), who was schizophrenic.  Id. at 673-75.

While the probation officer recommended that the probationer receive inpatient psychiatric care

and medication, he failed to ensure that this treatment actually be provided.  Id.  Ultimately, the

probationer was shot and killed by U.S. Marshals seeking to arrest him on a warrant for violating

the conditions of his probation.  Id. at 675.  The Taylor court rejected the plaintiffs' Eighth

Amendment deliberate indifference claim, finding that the relationship between the probation

officer and his probationer—who was not in physical custody and who was "his own primary

caretaker"—was more like the relationship between the child and the county in Deshaney than

that between prisoners and prison officials as described in Estelle.  Id. at 677.  Cf. Cerbelli v.

7

City of New York, 600 F. Supp. 2d 405, 413 (E.D.N.Y. 2009) (where psychiatric patient was released from a New York City–run psychiatric facility, after which he caused a disturbance at a police station resulting in his fatal shooting, the City was not liable, since the psychiatric facility "did not have a constitutional duty to protect him or provide him with medical services once he was no longer in its custody"); Luna v. Weiner, No. Civ.A. 05-2298, 2006 WL 1517747, at *3-4 (D. N.J. May 23, 2006) (rejecting parolee's claim that his parole officer had violated the Eighth Amendment by demonstrating deliberate indifference to his medical needs, since plaintiff was free to care for himself).

In the instant case, McGhie was not incarcerated or institutionalized when, as he alleges, he was deprived of necessary psychiatric care. Though he was on supervised release, and though the Probation Department had previously been providing him with necessary care, he was, upon the cessation of that care, free to find treatment on his own. Cf. Deshaney, 489 U.S. at 201 ("That the State once took temporary custody of Joshua does not alter the analysis, for when it returned him to his father's custody, it placed him in no worse position than that in which he would have been had it not acted at all; the State does not become the permanent guarantor of an individual's safety by having once offered him shelter."). The fact that such psychiatric care was a condition of McGhie's supervised release does not alter the analysis. McGhie has not stated a deliberate indifference claim under either the Eighth Amendment or the Due Process Clause.

### C. State-Created Danger

Even where a victim of harm is not in government custody (such that there is no "special relationship" under Deshaney), and has not been harmed directly by the government, a government entity may violate the Due Process Clause if it "in some way ha[s] assisted in creating or increasing the danger to the victim." Matican, 524 F.3d at 155. In applying the

8

"state-created danger exception" (to the requirement that due process violations involve harm

directly caused by the government), the Second Circuit has

> sought to tread a fine line between conduct that is passive (and therefore outside
> the exception) and that which is affirmative (and therefore covered by the
> exception). Thus, we have found state-created dangers . . . where police officers
> told skinheads that they would not prevent them from beating up protesters in a
> park; where police officers gave a handgun to a retired officer who then shot a
> fleeing robber; where a prison guard told inmates that it was "open season" on a
> prisoner, and the inmates beat up the prisoner; and where police officials
> encouraged an off-duty colleague to drink excessively, after which he killed three
> pedestrians in a car accident. By contrast, we held that no state-created danger
> existed where a police officer failed to intervene to prevent a colleague from
> shooting someone during an altercation.

Id. at 157 (citations and internal quotation marks omitted). The relevant distinction then is

"between 'active' and 'passive' facilitation." Pena v. DePrisco, 432 F.3d 98, 110 (2d Cir. 2005).

Unlike in the examples cited in Matican, nothing in McGhie's allegations indicates that

Defendants Main or Yelenovic actively encouraged or set in motion the decline in McGhie's

mental health that led to his altercation with police. This is so even if Defendants had a duty,

given the conditions of McGhie's probation, to provide him with psychiatric care. See Pitchell v.

Callan, 13 F.3d 545, 549 (2d Cir. 1994) (police officer did not violate the Due Process Clause by

failing to intervene to prevent an unlawful shooting where he could have done so, even though

police department rules required officers to intervene where a serious crime was threatened).

Even if Defendants, by allowing McGhie's psychiatric care to lapse, could be said to

have "created" a danger, they would not be liable under the Due Process Clause unless their

conduct "shocked the conscience." See Matican, 524 F.3d at 155 (even if a plaintiff can show a

state-created danger, in order to demonstrate a substantive due process violation, he must also

show that defendants' conduct was "'so egregious, so outrageous, that it may fairly be said to

shock the contemporary conscience'" (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 848

n.8 (1998)).  "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."  Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotation marks and alterations omitted).  Nothing in McGhie's Complaint indicates that Main's or Yelenovic's conduct was "outrageous" or "brutal."

### D.   Discrimination

Finally, McGhie alleges that the Defendants subjected him to "discrimination and an overall deprivation of my rights as an American with a disability."  (Compl. at 5.)  McGhie alleges no facts supporting a discrimination claim or a claim under the Americans with Disabilities Act, 42 U.S.C. § 12112 et seq.  Therefore, no such claims may proceed.

## IV.   CONCLUSION

For the reason stated above, McGhie's Complaint is DISMISSED.  The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

s/Nicholas G. Garaufis
_____
Dated: Brooklyn, New York                         NICHOLAS G. GARAUFIS
           October  7 , 2011                            United States District Judge

10